MICHAEL J. SHEPARD (CABN 91281)
KING & SPALDING
101 Second Street, Suite 2300
San Francisco, CA  94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300
Email:  mshepard@kslaw.com
Attorney for Defendant Melvin Martinez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>v.<br><br>MELVIN MARTINEZ, a/k/a "Aguila,",<br><br>  Defendant. | CASE NO. CR 18-417 CRB<br><br>**SENTENCING MEMORANDUM AND OBJECTION OF DEFENDANT MELVIN MARTINEZ**<br><br>Sentencing Date:  April 3, 2019<br>Time:  10:00 a.m.<br>Judge:  Hon. Charles R. Breyer |

**SENTENCING MEMORANDUM FOR MELVIN MARTINEZ**

This sentencing is the sad story of a hard-working man who spent nearly 19 years in Marin County toiling in restaurants, often holding down two jobs at the same time so that he could send money back to his family in Guatemala while still having enough to support himself in a low-cost lifestyle.  In the summer of 2018, his girlfriend was seriously ill and needed additional support, and he had begun using small amounts of methamphetamine.  When he lost one of his two jobs and was in need of additional income, he was approached by a friend who asked him for help in dealing methamphetamine.  He made the mistake of agreeing, and during that summer he served as a runner on a few deals.  In return, he earned less than $2000, plus some methamphetamine for his personal use, and he also earned this prosecution, which will mean the end of his time in the United States.

Fortunately, defendant Melvin Martinez is eligible for the safety valve under 18 U.S.C.A. § 3553(f)(1)-(5). In addition, he has been in continuous custody since his arrest on September 18, 2018. This court can and should therefore sentence him to time served. His punishment for his mistake, which includes over six months in custody and will soon include deportation, is already severe. No penal purpose will be advanced by delaying his deportation — the only impact of additional incarceration will be increased costs for the Bureau of Prisons.

## I.   Defendant Melvin Martinez

Mr. Martinez is 37 years old. He grew up in severe poverty in Guatemala. His father, now deceased, was a field worker and his mother is a homemaker. Access to food was limited; sometimes they had it, and other times not. Before he became a teenager, he stopped attending school so that he could work with his father in the fields to help support his mother and his younger siblings.

After he turned 16, Mr. Martinez left his family in the hopes of earning more money in the United States. He came directly to the Canal District in Marin County, lived at first with his uncle, and within a week after his arrival he began washing dishes in nearby restaurants.

Hours in these jobs were not always plentiful. As a result, he worked more than one job at the same time. Eventually he advanced beyond dishwashing, serving essentially as a sous chef in various well-known restaurants. He changed jobs if he could get more hours, and when he did so he got the benefit of learning additional recipes. He was paid only in cash.

Sharing a rental residence with several other workingmen, Mr. Martinez spent as much time working as he could, and amassed no assets of value. For much of this time, his father was ill (with diabetes, among other problems) and unable to continue working. His mother's health did not allow her to work either, leaving his parents in need of medication and financial support. Mr. Martinez regularly sent money home, but never had the opportunity to return home, even around his father's death. His mother is very sad about his offense and his incarceration, but has remained supportive.

Mr. Martinez understands that he will be deported, and intends to look for a job at a restaurant in Guatemala.

## II.   Mr. Martinez's wrongdoing

2

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ

For eighteen and a half years, Mr. Martinez was a hard-working immigrant, and other than his entry into the country in order to increase his income and help care for his parents, he was never in any trouble. He had no arrest record.

Unfortunately, in June of 2018 he lost one of his jobs, and he did so at an inopportune time. In addition to the needs of his family, his girlfriend was seriously ill, and she too needed financial help. At the same time, he had begun to use methamphetamine.

He was therefore an easy mark when he was recruited by his friend Agusto Wosbeli Aguilar Meda to serve as a runner in some of Mr. Aguilar Meda's methamphetamine deals. Most of the deals turned out to be with an undercover agent on the other side, and they followed the same pattern. The drugs were sold for something between $600 and $2000. Mr. Meda set up each deal. Mr. Meda supplied the drugs. Mr. Meda decided on the amount to be sold. Mr. Meda decided on the price. Mr. Meda decided on the location of the sale. Mr. Martinez followed the directions he was given and delivered the drugs – as a denizen of Marin County, he did so on his bicycle – and brought the payment directly back to Mr. Meda. Mr. Martinez was merely a runner at the bottom of Mr. Meda's operation.

**III.   Mr. Martinez's Acceptance of Responsibility**

Mr. Martinez pled guilty on December 19, 2018. Following his guilty plea, he submitted a written statement to the Probation Officer, and also answered her questions about the offense.

His written statement, in addition to noting some of the background contained in this Sentencing Memorandum, explained that he was "very sorry that [he] distributed methamphetamine," that he "appreciate[s] the harm that this drug has caused on others," and that he "sincerely regret[s] [his] involvement in distributing methamphetamine."

**IV.   Mr. Martinez's Time in Custody**

Mr. Martinez was arrested on September 18, 2018, and he has been in custody ever since. His time in custody, served at the San Francisco County Jail, has not been easy. Among other things, Mr. Martinez was attacked by another inmate, and as a result of the attack no longer has clear vision in one eye.

**V.   Guideline Calculations**

3

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ

The calculations contained in the Presentence Report have been agreed to by all the parties. For the reasons, and based on the authorities, noted below, the guidelines are excessive when applied to this case.

**VI.    Mr. Martinez Should Be Sentenced To Time Served**

The guidelines suggest that Mr. Martinez should serve at least 50 more months, but this merely proves the wisdom of the Supreme Court's admonishments that district courts must consider the guidelines "together with all other sentencing goals," *United States v. Booker,* 543 U.S. 220, 224 (2005), and "may not presume that the guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 50 (2007). Mr. Martinez was a bit player in a few deliveries of methamphetamine, none of which cost more than $2000. For this conduct, he has already served over six months in jail, where he suffered a beating. Once he completes his sentence, he will be transferred to ICE custody, and at some point thereafter, he will be deported and subject to felony prosecution if he ever returns.

Even acknowledging the harm from dealing methamphetamine, these punishments that Mr. Martinez has already suffered and/or is certain to suffer in the future are more than sufficient to satisfy the purposes of sentencing under 18 U.S.C.A. § 3553(a)(2). Mr. Martinez therefore respectfully requests that the court sentence him to time served.

There is ample authority for such a sentence. The primary directive of the governing statute is to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing. *United States v. Ranum,* 353 F. Supp.2d 984, 986 n.1 (E.D. Wis. 2005) (also quoting Justice Kennedy's 2004 speech to the ABA that "prison sentences are too long..."). Consistent with that directive, district judges are now "empowered with considerable discretion in sentencing," *see United States v.* Taylor, 532 F.3d 69 (1st Cir. 2008), have the freedom to consider a "tapestry of factors, through which runs the thread of an overarching principle. . ., sometimes referred to as the 'parsimony principle,'" *United States v. Rodriguez*, 527 F.3d 221, 227-28 (1st Cir. 2008), and are allowed to disagree with the range proposed by the guidelines. *United States v. Ranum, supra,* at 987.

As the Presentence Investigation Report notes, a downward variance in this case can be based on Mr. Martinez's ability to use his cooking skills to obtain a legitimate income in Guatemala, which would

4

reduce his risk of returning to the United States. *See* Presentence Investigation Report ("PSR") at 15. Citing this factor, the Report recommends a downward variance of 21 months. But this is only one of many recognized factors that are not reflected in the guidelines and that justify a downward variance, or even a departure. These other factors are even more compelling, and easily warrant a far larger variance:

- Having used the drugs himself, Mr. Martinez believed them to be of high quality, but he did not know of – let alone have control over -- the amount and purity of the drugs he delivered. His lack of control over this driver of his sentence is a sufficient basis for a variance, or even a departure, because it is the amount and purity that drive the guidelines as high as they are, even in the face of the small amount of money that he received. *See, e.g., United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997).

- The harsh treatment of this offense by the guidelines is based on the assumption that a high percentage of purity of the narcotics possessed by the defendant suggests a prominent role in the enterprise, but this suggestion – and therefore the guideline taken by the Probation Office and the government as the starting point -- is demonstrably wrong when applied to methamphetamine. *See, e.g., United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa 2018) (granting variance of 160 months from bottom of range, demonstrating the extent to which methamphetamine sentences exceed those for other narcotics as a result of the 10x multiple for purity, and stating that the assumption on which this multiple is based is "divorced from reality"); *United States v. Hartle,* 2017 WL 2608221 (D. Idaho June 15, 2017) ("increases in methamphetamine purity also undermine its function as a proxy for culpability, *especially for low-level offenders"*) (emphasis added); *United States v. Hayes*, 948 F.Supp.2d 1009 (N.D. Iowa 2013) (variance of 51 months from bottom of range); *United States v. Ibarra-Sandoval*, 265 F.Supp.3d 1249, 1255 (D.N.M. 2017); *see* U.S.S.G. § 2D1.1, comment n.27(C). This suggestion is also demonstrably wrong when applied to Mr. Martinez, who by the government's own account did not have a prominent role in the enterprise. *See generally Spears v. United States,* 555 U.S. 261, 265–66 (2009) (per curiam) (district courts are entitled

5

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ

- His ill mother needs his financial support, which he cannot provide while in custody. *See generally, e.g., United States v. Munoz-Nava,* 524 F.3d 1137 (10th Cir. 2008).

- His impending deportation itself imposes considerable punishment. *See generally, e.g., United States v. Thavaraja,* 740 F.3d 253 (2d Cir. 2014); *cf. Jordan v. De George*, 341 U.S. 223 (1951) (Jackson, J., dissenting) (deportation is "a life sentence of banishment in addition to the punishment to which a citizen would suffer for the identical acts").

- Because of his immigration status, Mr. Martinez will not be eligible for various reductions in his time served, such as being sent to a halfway house toward the end of his term, *see, e.g., United States v. Navarro-Diaz,* 420 F.3d 581 (6th Cir. 2005) – not to mention the chance that he will spend additional time in immigration custody awaiting deportation.

- Mr. Martinez was involved in the offense for only a short period of time, *see generally, e.g., United States v. Huckins,* 529 F.3d 1312 (10th Cir. 2008), and during that short time period he had a financial hardship and a drug problem himself. *See generally, e.g., Id.; United States v. Cani*, 545 F.Supp.2d 1235 (M.D. Fla. 2008); *United States v. Hodges*, 2009 WL 366231 (E.D.N.Y. February 12, 2009).

- Mr. Martinez's hard-working nature and the skills he has learned while in the United States demonstrate his potential for rehabilitation. *See generally, e.g., United States v. Martin,* 520 F.3d 87 (1st Cir. 2008).

- Given the time he has already served for a gain of less than $2000, plus his impending deportation, the guideline sentence is far greater than necessary to protect the public from Mr. Martinez or to deter others. *See generally, e.g., United States v. Willis,* 479 F.Supp.2d 927 (E.D. Wis. 2007).

The government invested resources in this case because, as it explained to the Probation Office, it believed that a different defendant, Mr. Meda, was "involved in large scale trafficking of narcotics . . . and would most likely take over distribution of narcotics in the area after his competition was eliminated

6

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ

by law enforcement's investigation and subsequent arrests and prosecutions." PSR at 4. In contrast, Mr. Martinez was a low-level runner; he participated only in a few small transactions; and he did so only after he had lost a job, needed money for his ill girlfriend and family, and was using methamphetamine himself.

The resulting prosecution of Mr. Martinez produced mandatory minimum sentences and guideline calculations, inflated by mistaken assumptions, that make it appear that substantial incarceration would be the starting place for a sentence in this case. It is in the government's discretion to sweep Mr. Martinez into its prosecution and pursue guideline sentences despite the guideline's flaws and despite the long list of mitigating circumstances. But thanks to the safety valve, the court has discretion to produce a just result and the power – and in fact the duty – to determine that the guideline range is unreasonable. *See, e.g., Gall v. United States, supra.*

Taking a fresh perspective to the determination of an appropriate sentence, the court should sentence Mr. Martinez to time served. A sentence of more than six months of difficult incarceration, plus the inevitable additional time in ICE custody, followed by deportation from his home of nearly twenty years, is more than sufficient punishment for an offense that paid less than $2000.

## Not-Fully-Resolved Objection of Melvin Martinez

In response to an objection from Mr. Martinez, the Probation Office substantially modified paragraph 20 of the Presentence Investigation Report. That paragraph now acknowledges that Mr. Martinez lived with others and that the drugs the government reported finding at that residence "were not directly connected" to Mr. Martinez. Because the Report (relying undoubtedly on a submission by the government) does not contain any evidence to support attributing those drugs to Mr. Martinez, those drugs should not be considered by this Court at the sentencing, *see generally, e.g., United States v. Figueroa-Labrada,* 720 F.3d 1258, 1265 (10th Cir. 2013); *United States v. Godinez-Perez*, 864 F.3d 1060, 1062 (10th Cir, 2016), and do not belong in the Presentence Report as if they bear on the culpability of Mr. Martinez.

DATED: March 27, 2019         Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Michael J. Shepard*
　　　　　　　　　　　　　　　　　　　　Michael J. Shepard
　　　　　　　　　　　　　　　　　　　　KING & SPALDING

7

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ

## CERTIFICATE OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:
KING & SPALDING
101 Second Street, Suite 2300
San Francisco, CA  94105

On March 27, 2019, I caused to be served the document entitled **SENTENCING MEMORANDUM FOR MELVIN MARTINEZ** on all parties on the service list by causing the document to be electronically filed via the Court's CM/ECF system, which effects service on counsel who are registered with the CM/ECF system.

## SERVICE LIST

*Attorney for Plaintiff*
Ross E. Weingarten, Esq.
U.S. Attorney's Office for the Northern District of California
450 Golden Gate Avenue, 11th Floor
San Francisco, CA 94102-3495
Telephone: (415) 436-6747
Facsimile: (415) 436-7200
Email:  ross.weingarten@usdoj.gov


DATED:  March 27, 2019        */s/ Michael J. Shepard*
                              Michael J. Shepard
                              KING & SPALDING

8

*United States of America v. Melvin Martinez a/k/a "Aguila",* No. CR 18-417 CRB
SENTENCING MEMORANDUM OF DEFENDANT MELVIN MARTINEZ